**Joel E. Guthals**
**GUTHALS, HUNNES & REUSS, P.C.**
**P.O. Box 1977**
**Billings, MT 59103**
**Telephone: (406) 245-3071**
**Facsimile: (406) 245-3074**
**Email: jeguthals@ghrtlawfirm.com**

**Michael J. Flynn, Admitted Pro Hac Vice**
**One Central Plaza, Suite 240**
**Boston, MA 02108**
**Telephone: 858-775-7624**
**Facsimile:  858-759-0711**
**Email: mike@mjfesq.com**

**Attorneys for Appellant TIMOTHY L. BLIXSETH**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

|  |  |
|---|---|
|  | **Bankruptcy Case Nos. 08-61570; 08-61571; 08-61572; 08-61573**<br>**Appeal to U.S. District Court**<br>**District Court Case No.**<br>**CV-09-47-BU-SEH** |
| **Timothy L. Blixseth,**    Appellant, |  |
| **Yellowstone Mountain Club, LLC,**<br>**Yellowstone Development LLC,**<br>**Big Sky Ridge, LLC**<br>**Yellowstone Club Construction Co., LLC**    Appellees. |  |

**OPENING BRIEF OF TIMOTHY L. BLIXSETH, APPELLANT**

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF THE CASE.............................................. 1

STATEMENT OF JURISDICTION. ............................................................. 2

STATEMENT OF ISSUES PRESENTED. .................................................. 3

COURSE OF PROCEEDINGS WITH FACTUAL BACKGROUND........................ 3

    A.    The YMC Bankruptcy Case.. ...................................................... 3

    B.    Adversary Proceeding 09-00014. ............................................. 12

ARGUMENT............................................................................... 16

    I.    THE BANKRUPTCY COURT ERRED IN CONFIRMING A PLAN
        CONTAINING EXCULPATORY CLAUSES AND RELEASES IN
        FAVOR OF THIRD PARTIES............................................... 16

        A.    The Plan Improperly Exculpates Cross  Harbor And Edra
            Blixseth. ...................................................................... 16

        B.    The Plan Improperly Exculpates Brown...................................... 17

            1.    Stephen Brown's Extensive Actual Conflicts Of Interest.. 17

            2.    Based On Those Facts, The Releases Cannot Exculpate
                Brown From Claims That Blixseth Has Arising During The
                Bankruptcy......................................................... 20

        C.    The Bankruptcy Court Therefore Cannot Release Claims Against
            A Non-Debtor.. .......................................................... 23

    II.    THE COURT ERRED IN ADOPTING FINDING OF DEBTORS'
         "GOOD FAITH" WHEN DEBTORS' BAD FAITH IS A PENDING IN
         ADVERSARY PROCEEDING ........................................... 25

A.    The Bankruptcy Court's Finding Of Good Faith Was Improper Because It Failed To Consider The Debtors' Repetition Conduct................................................................................. 25

B.    The Bankruptcy Court Improperly Allocated The Burden Of Proving Bad Faith On Appellant....................................................... 26

C.    The Bankruptcy Court Committed Reversible Error By Failing To Consider The Debtor's Prepetition Bad Faith In Determining "Good Faith" Under § 1129................................................ 27

D.    The Bankruptcy Court Erred In Making Findings On Good Faith When That Issue Remained Open In Appellant's Adversary Proceeding................................................................. 30

III.    THE BANKRUPTCY COURT ERRED IN APPROVING THE CREDIT SUISSE SETTLEMENT INCORPORATED IN THE PLAN CONFIRMATION ORDER ............................................. 32

CONCLUSION.............................................................................. 35

# TABLE OF AUTHORITIES

**CASES**

*Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983)............... 22

*Aspen Limousine Servs. v. Aspen Limousine Serv.*, 193 B.R. 325, 338 (D. Colo. 1996)................................................................................................................ 29, 31

*Commercial Wholesalers, Inc. v. Investors Commercial Corp.*, 172 F.2d 800, 801 (9th Cir.1949). ................................................................................................ 24

*In re 3dfx Interactive, Inc.*, 2006 Bankr. LEXIS 1498 (Bankr. N.D. Cal. June 29, 2006).............................................................................................. 21, 23, 30

*In re A & C Properties*, 784 F2d 1377 (9th Cir. 1986)...................................................... 33

*In re ACI Sunbow, LLC*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997).................... 26, 27

*In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984). ................................... 28

*In re Almengual*, 301 B.R. 902 (Bkrtcy. M.D. FL 2003). ................................................. 33

*In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir.1989)............................. 24

*In re Arden*, 176 F.3d 1226, 1230 (9th Cir. 1999)............................................................. 29

*In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)................................................................ 28

*In re Caldor, Inc.-NY*, 193 B.R. 165, 169 (Bankr. S.D.N.Y. 1996)............................... 21

*In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 381 (8th Cir. 2000)................................ 27

*In re Chinichian*, 784 F.2d 1440, 1444 (9th Cir. 1986)..................................................... 26

*In re Dennis Ponte, Inc.*, 61 B.R. 296, 299 ( 9th Cir. BAP 1986). .................................. 31

*In re Duncan*, 2009 WL 981162 (Bankr. D.Mont. 2009)................................................. 33

*In re Fas Mart Convenience Stores, Inc.*, 265 B.R. 427, 432
(Bankr. E.D. Va. 2001). ............................................................................ 21

*In re Gulfstar Indus.*, 236 B.R. 75, 77 (M.D. Fla. 1999). .................................. 3

*In re Harbin*, 486 F.3d 510, 519 (9th Cir. 2007). ........................................... 31

*In re Jorgensen*, 66 B.R. 104, 108-09 (9th Cir. BAP 1986)............................ 30

*In re Keller*, 157 B.R. 680, 686-87 (Bankr.E.D.Wash.1993). ........................ 24

*In re Lewis*, 79 B.R. 893, 895 (9th  Cir. BAP 1987)......................................... 3

*In re Lowenschuss*, 67 F.3d 1394, 1401-2 (9th  Cir. 1995). ..................... 23, 24

*In re Marsch*, 36 F.3d, 825, 828 (9th  Cir. 1994)........................................... 28

*In re Marshall*, 298 B.R. 670, 681-682 (Bankr. C.D. Cal. 2003)............. 26, 28

*In re Masters, Inc.*, 149 B.R. 289 (E.D.N.Y.1992). ....................................... 32

*In Re Mortgage & Realty Trust*, 195 B.R. 740, 751 (Bankr. C.D. Cal. 1996). ...... 21-23

*In re Natural Land Corp.*, 825 F.2d 296, 298 (11th  Cir. 1987)................... 26, 27

*In re Nelson Co.*, 117 B.R.813, 820 (Bankr. E. D. Pa. 1990), *affd*,  959 F.2d 1260 (3rd
Cir. 1992). ............................................................................................ 34

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988). ...... 27, 28

*In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). .............................................. 3

*In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 614-17 (9th Cir. BAP 1990)........ 24

*In re Shannopin Mining Co.*, WL31002883 (W.D.Pa. 2002)........................... 34

*In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 77 (9th Cir. BAP 1994). ......... 24

*In re Sylmar Plaza, L.P.*, 314 B.R. 1070, 1074 (9th Cir. 2002). ..................... 28

*In re Urban*, 375 B.R. 882, 887 (9th Cir. BAP 2007). ........................................................ [3]

*Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004)............................................. [2]

*Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)....................................................... [21]

*Serdy v. Castello*, 123 B.R. 466 (BAP 9th Cir. 1991). ....................................................... [26]

*Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)............................................................ [22]

*Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985). ................................................... [24]

## STATUTES AND RULES

11 U.S.C § 1141................................................................................................................ [2]

11 U.S.C. § 1103(b). ....................................................................................................... [21]

11 U.S.C. § 1107(a). ....................................................................................................... [32]

11 U.S.C. § 1112(b). ........................................................................................... [25], [28], [29]

11 U.S.C. § 1129(a)(3)..................................................................................................... [30]

28 U.S.C. § 1334(a). ........................................................................................................ [2]

28 U.S.C. § 158(a). .......................................................................................................... [2]

F. R. Bankr. P. 8013......................................................................................................... [3]

F. R. Bankr. P. 9019(a). ................................................................................................... [3]

Fed. R. Bankr. P. 2002(a)(3)............................................................................................ [32]

Fed. R. Bankr. P. 8001(1). ............................................................................................... [2]

## INTRODUCTION AND STATEMENT OF THE CASE

Appellant Timothy L. Blixseth appeals from the final order of the United States Bankruptcy Court for the District of Montana (Kirscher, J) entered on June 2, 2009, confirming the third Chapter 11 Reorganization Plan (the "Plan") of the Debtors and Appellees, Yellowstone Mountain Club, LLC ("YMC"), Yellowstone Development LLC ("YD"),  Big Sky Ridge, LLC ("BSR") and  Yellowstone Club Construction Co., LLC ("YCC"), collectively referred to as the "Yellowstone Club" or the "Debtors". The Plan should never have been approved by the Bankruptcy Court for several reasons.

First, in derogation of Ninth Circuit precedent on point, and while Appellant is currently a plaintiff and counter-defendant in an adversary proceeding with the Debtors and the Unsecured Creditors' Committee  over liability for at least $375 million in loans to the Debtors by Credit Suisse, the Plan purports to release and exculpate the very individuals that Appellant contends are responsible (Edra Blixseth, CrossHarbor, Credit Suisse, and their principals) from any liability.

Second, although the Order confirming the Plan finds that there is no evidence of bad faith, the Bankruptcy Court *precluded* Appellant from presenting any bad faith evidence in Appellant's still-pending adversary proceeding, and at the same time required Appellant to defend against the Unsecured Creditor's Committee's complaint filed two days before trial on the adversary proceeding was set to begin.

–1–

Third, the Plan cannot be confirmed as it includes a settlement of all claims against Credit Suisse approved by the Bankruptcy Court on the day of the hearing on the confirmation of the plan without providing any *bona fide* notice or opportunity to be heard to any interested party in obvious derogation of F. R. Bankr. P. 9019(a).

Given the fact that the Plan improperly discharges potentially liable defendants from liability in Appellant's pending adversary proceeding, makes findings of fact on issues in the adversary proceeding on which the bankruptcy court precluded Appellant from presenting evidence, and includes a settlement with a major creditor without any notice whatsoever to any interested party, the Bankruptcy Court's Order confirming the Plan should be set aside or modified to as necessary to correct these legal defects.

## STATEMENT OF JURISDICTION

The District Court has appellate jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001(1).  The Order Confirming the Third Amended  Chapter 11 Plan of the Debtors, entered on June 2, 2009 Docket ("Dkt.") 1026, Appendix ("Apdx.") 002112, is an appealable "final order" as that term is used in F. R. Bankr. P.  8001(1). See 11 U.S.C § 1141; *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004).  The Notice of Appeal was filed on June 10, 2009.  Dkt. 1038, Apdx. 02281, and is therefore timely under F. R. Bankr P. 8002(a).

On appeal from a bankruptcy court, a district court "may affirm, modify, or reverse a bankruptcy judge's judgement, order, or decree, or remand with instruction for further proceedings." F. R. Bankr. P. 8013. Issues of fact are reviewed under a clearly erroneous standard of review. *Id.* Questions of law are to be reviewed under a *de novo* standard of review. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005); *In re Lewis*, 79 B.R. 893, 895 (9th Cir. BAP 1987); *In re Urban*, 375 B.R. 882, 887 (9th Cir. BAP 2007)(conclusions of law and issues of statutory interpretation *de novo*). Determinations by the bankruptcy court involving mixed questions of law and fact are reviewed *de novo*. *In re Gulfstar Indus.*, 236 B.R. 75, 77 (M.D. Fla. 1999).

## STATEMENT OF ISSUES PRESENTED

1.     Whether it was reversible error for the Bankruptcy Court to confirm the Plan containing exculpatory clauses and releases in favor of third parties.

2.     Whether the Bankruptcy Court erred in adopting a finding of fact on the Debtors' good faith when the Debtor's bad faith is an unresolved factual issue that is the subject of Appellant's currently pending adversary proceeding.

3.     Whether it was reversible error for the Bankruptcy Court to approve a settlement that was incorporated in the Plan without a motion to approve the settlement, notice of the motion, and hearing as required by F. R. Bankr. P. 9019(a).

## COURSE OF PROCEEDINGS WITH FACTUAL BACKGROUND

A.     The YMC Bankruptcy Case.

–3–

The Debtors comprise a private ski and golf resort development known as the Yellowstone Club, located in Big Sky, Montana on 13,500 acres of private land near the northwest corner of Yellowstone National Park.  The Yellowstone Club was established by Timothy and Edra Blixseth in late 2000.  Yellowstone Club has a limited number of residential properties and memberships, which are available by invitation only.  Yellowstone Club amenities are available exclusively to Yellowstone Club members and their guests.  These amenities include free lodges, a private ski lift and ski trails, and an 18-hole golf course.  Debtors are all Montana limited liability companies.  Dkt. 517, Apdx.  00652-653. Through divorce proceedings in August 2008 in California, Edra Blixseth became the indirect owner and manager of the Yellowstone Club and the 100% owner of Blixseth Group Inc. ("BGI") on August 18, 2008. *Id*. at 00648, 00652-653.  Thereafter Edra Blixseth changed the name of BGI to BLX Group Inc.

After being unable to service its debts, including a debt in excess of $300 million to Credit Suisse, Edra Blixseth caused YMC to file its Chapter 11 voluntary petition on November 10, 2008.  Dkt. 1, Apdx. 00003.  YMC's bankruptcy case was administratively consolidated with the bankruptcy cases of YD, BSR, and YCC on November 13, 2008, with YMC being the lead case.  Dkt. 39, Apdx. 00107.

Appellant is a creditor of YMC, Apdx. 00572, and became a party in interest by virtue of Adversary Proceeding 09-00014, discussed below, in which claims are

made against Appellant by the Debtors and the Official Unsecured Creditor's
Committee ("UCC"), which Appellant denies, of breach of fiduciary duty and
recovery of fraudulent transfers regarding a loan from Credit Suisse, the Debtor's
major secured creditor.  Apdx.02338, Apdx. 02401.

On November 13, 2008, after an evidentiary hearing on YMC's emergency
motion for post-petition financing, the Court granted the motion as an interim order,
Apdx. 00111, entered an Order for joint administration of the individual Chapter 11
cases of each of the debtors, with the YMC Petition being the lead case, No. 08-
61570. Dkt. 39, Apdx. 00107.

YMC filed its bankruptcy schedules on November 11, 2008.  Dkt. 13. Apdx..
00038. The schedules listed assets of $599,945,015.94 and total debt of
$399,218,621.86.  The largest secured creditor was Credit Suisse with a debt of $307
million.

On November 26, 2008, the Court denied the motion for final
debtor-in-possession financing (Dkt. 85, Apdx. 00169), but allowed the refiling of an
oral motion for the same relief and set an evidentiary hearing on December 11, 2008.
Dkt. 87, Apdx. 00172.  Credit Suisse was unable to provide the funds for final DIP
financing and in place of Credit Suisse, the Court approved on December 17, 2008
the Debtors' Motion to obtain Debtor-in-Possession financing from CrossHarbor
Capital Partners, LLC ("CrossHarbor"). Dkt. 182, Apdx. 00176.

At the December 11, 2008 hearing and repeatedly thereafter, Credit Suisse contended and offered evidence that CrossHarbor and its principal, Sam Byrne, conspired with Edra Blixseth, Appellant's former wife, to take over the Yellowstone Club in order to obtain ownership of the Debtors, put it in bankruptcy, and acquire it for a fraction of the price that CrossHarbor had proposed to pay for the Yellowstone Club prior to the bankruptcy, and to effectuate an inequitable transfer of ownership of the Yellowstone Club to insiders, including CrossHarbor and Discovery Land Company. Credit Suisse presented evidence and argument at several hearings that CrossHarbor financially dominated and controlled Edra Blixseth, and through her the Debtors, causing the commencement of the bankruptcy cases and formulation of the plan to the detriment of creditors, especially Credit Suisse, and to the benefit of CrossHarbor and other insiders and to strip secured creditors of their collateral rights and liens.

The evidence that Credit Suisse presented in several bankruptcy court hearings and filings demonstrated that CrossHarbor, very experienced in the acquisition of distressed properties and bankruptcies, engaged in a three year scheme to acquire the YC assets which led to the YC bankruptcy and CrossHarbor's eventual acquisition of the YC assets through the Chapter 11 Plan. Dkt. 341, Ex. 2, p 63  Apdx. 00217; Dkt. 341, Ex. 4, pp 32, 92, Apdx. 00251, 00266; Dkt. 341, Ex. 5, pp 262, 267, Apdx. 00311, 00312; Dkt. 341, Ex. 6, pp 42, 45, Apdx 00331; Dkt. 683, pp 42, 61, 255,

Apdx. 00869, 00888, 01082; Dkt. 685, pp 278 290, Apdx. 01437, 01449; Dkt. 923,

pp 104, 140 and 158-59, Apdx 03555, 03591, 03609, 03610; Dkt. 883, Ex. 48, pp 31

289, Dkt. 883, Ex. 489, pp 8, 12, 30, 31, 202, 206, Apdx. 01676,

01677,01682,01725,01726.

In June 2007, CrossHarbor and its principal Sam Byrne negotiated with

Appellant and entered into Letter of Intent to purchase the YC entities/assets for $450

million, which CrossHarbor terminated in 2008, in the midst of the divorce

proceeding between Appellant and Edra Blixseth.  In these negotiations Byrne

suggested a bankruptcy to accomplish his acquisition objective. Beginning in July

2007 Byrne engaged in extensive negotiations and communications with Edra

Blixseth, both before and after the YC bankruptcy was filed, which put CrossHarbor

in the position of being able to control Edra Blixseth's assets and finances, control the

YC entities and business, control the Chapter 11 Bankruptcy, control the terms of the

Chapter 11 bankruptcy plan, and eventually purchase the YC assets through the

Chapter 11 Plan.  The agreements that they talked about and reached included

financing from CrossHarbor to effectuate the Marital Settlement Agreement

("MSA"), finalizing her divorce from Appellant, and allowing her to receive BGI and

the YC entities, secured by a $35 million, one month mortgage on her home,

executing full releases from the Debtors in favor of Appellant later challenged in the

bankruptcy as being invalid by the Debtors, control of YC by CrossHarbor, an

"Agreement to Form" for CrossHarbor to acquire the YC, which CrossHarbor did not perform, an agreement to put the YC entities into bankruptcy, CrossHarbor's selection of a bankruptcy lawyer for the YC, CrossHarbor's drafting of the bankruptcy schedules for the Debtors, and a debtor-in-possession ("DIP") financing agreement that gave CrossHarbor veto authority over the terms of the Chapter 11 Plan.

As a result of these agreements Cross Harbor became the "stalking horse" bidder for purchase of the YC and eventual buyer of the YC assets under the Chapter 11 Plan for approximately $150 million, one third of the amount that CrossHarbor had agreed to pay prior to the filing of the YC bankruptcy petitions.

On February 13, 2009, the Debtors filed their first reorganization plan and disclosure statement. Dkt. 385, Apdx. 00390.  Numerous objections to the Debtors' Disclosure Statement were filed on February 25, 2009, including an Objection by Appellant. Apdx. 00558.  On March 3, 2009, the Debtors filed a First Amended Reorganization Plan and Disclosure Statement (Dkt. 516, Apdx. 00577, Dkt. 517, Apdx. 00634.  On April 3, 2009, the Debtors filed a Second Amended Reorganization Plan and Disclosure Statement.  Dkt. 691, Apdx. 01494, Dkt. 692, Apdx. 01551.

On March 24, 2009, Appellant filed a Complaint in Intervention against the Debtors and the UCC in pending Adversary Proceeding 09-00014, discussed below,

between Credit Suisse and the UCC, regarding the Credit Suisse loan. . Dkt. 38, Apdx. 02322.  On May 11, 2009, Appellant objected to confirming Debtors' Second Amended Plan.  Dkt. 860, Apdx. 01658, joining in the confirmation objections of Credit Suisse.  Dkt. 859, Apdx. 01645.

On May 18, 2009, the Court held a confirmation hearing on the Second Amended Plan for Reorganization.  At that hearing, for the first time, a potential settlement with Credit Suisse was discussed and approved.  May 18, 2009 Hearing Transcript, p. 100, Apdx. 01772.  At the conclusion of the confirmation hearing, the following statement was entered in the docket:  "The court will enter an order regarding confirmation of the Debtor's Plan and any remaining objections thereto, including the objections filed by Timothy L. Blixseth and Desert Ranch, LLP."  Dkt. 920, Apdx.01765.  The Court allowed Debtors to file an amended plan to incorporate the settlement that had been reached with Credit Suisse.

On May 22, 2009, the Debtors filed a Third Amended Chapter 11 Plan (the "Plan").  Dkt. 947, Apdx. 01885.  On May 28, 2009, the Debtors lodged the "term sheet" setting out the terms for a settlement of various disputes with, among others, Credit Suisse. Dkt. No. 985, 01971.  This was the term sheet that had been approved by the Court at the May 18, 2009 confirmation hearing. It had not been previously provided to creditors or parties in interest.

–9–

On May 22, 2009, Debtors filed a "post confirmation report" and proposed findings of fact and conclusions of law that had contentions and findings that were pending in Adversary Proceeding No. 09-00014, including arguments that prepetition releases from the Debtors to Appellant were invalid, and that Appellant had not demonstrated any bad faith toward him in the bankruptcy proceedings and events leading to them.   Appellant objected to proposed Finding of Fact No. 26 that "there was no credible evidence of bad faith to this Court at the Confirmation Hearing or otherwise," a finding that was also characterized as a Conclusion of Law, ¶ 39(l), Dkt. 951, Apdx. 01946.

Appellant also objected to Section 8.4 of the Plan, that provides broad release and exculpation protections to insiders. The parties protected include Edra Blixseth, her affiliates, BLX Group, Inc., and CrossHarbor (and its affiliates) for, among other things, "any act or omission in connection with, relating to or arising out of the Chapter 11 Cases."  This broadly worded release would potentially release Appellant's claims against Edra Blixseth and the prepetition debtors for their conduct that led to the UCC counterclaims against Appellant in Adv. Pro 09-00014. The clauses also could potentially release UCC chairman Stephen Brown, who was Appellant's lawyer, from liability to Appellant for breach of fiduciary duty arising out of his dual representation of Appellant in connection with the Credit Suisse loans to

–10–

the Debtors and his chairmanship of the UCC in suing Appellant in connection with

those very same loans. Dkt. 956, Apdx. 01955.

On June 1, 2009, the bankruptcy court held a hearing on the confirmation of

the Debtors' Third Amended Reorganization Plan.  On June 1, 2009, the Bankruptcy

Court conducted a hearing on additional confirmation objections filed by Creditors

Highland Capital and Robert Sumpter, continuing to take under advisement the

objections to confirmation filed by Appellant.  Dkt. 1029, Apdx. 02126.  Appellant

continued to file written objections to confirmation. Dkt. 1017, 02088.  The record on

which confirmation was based included "the entire record of the Chapter 11 cases."

May 18, 2009 Hearing Transcript, pp. 104-105, Apdx. 01875-1876.

On June 2, 2009, the Bankruptcy Court entered a memorandum of decision and

order confirming the Plan.  Dkts. 1025; 1026, Apdx. 02094, 02113.   In the

memorandum of decision the Bankruptcy Court overruled objections of Appellant to

confirmation.  The Bankruptcy Court adopted the proposed arguments and findings

over Appellant's objections, despite having precluded Appellant from presenting

evidence of bad faith at the trial of the Adversary Proceeding.  *See* March 27, 2009

Order Denying Continuance of Adversary Proceeding.  Adv. Pro. No. 09-00014.

Dkt. 62, Apdx. 02338.

On June 10, 2009 Appellant filed a notice of appeal of plan confirmation.  Dkt.

1038, Apdx.02282.  Appellant filed a motion for stay of enforcement of the plan and

–11–

confirmation order, which was a request for a partial stay of Plan provisions

pertaining to Appellant.  Id.  The Bankruptcy Court denied Appellant's motion for

stay pending appeal.  Dkt. 1112, Apdx.02292.

B.      Adversary Proceeding 09-00014.

        On February 25, 2009, Credit Suisse commenced an adversary proceeding

against the Debtors and the Unsecured Creditors' Committee for a declaratory

judgment determining the validity, priority or extent of it's lien or other interest in

property of the Debtor pursuant to its $375 million loan to the Debtors, Adversary

Proceeding No. 09-00014, Dkt. 1, Apdx.02294.  On March 3, 2009, the UCC filed an

adversary proceeding against Credit Suisse, Dkt. 1, Apdx. 03422, which was

consolidated with the pending Credit Suisse Adversary Proceeding, Adv. Pro.

09-00014.  Dckt.  20, Apdx. 02315. Appellant was not a defendant in either adversary

proceeding, but was named throughout the UCC's complaint as a target of the

allegations and relief sought.

        On March 12, 2009, the court set a trial date on the consolidated adversary

proceeding for April 22, 2009. Dkt, 24, Apdx. 02318. Because Appellant learned that

the UCC complaint in the consolidated adversary proceeding alleged that Appellant

and Credit Suisse conspired to breach his fiduciary duties to the Debtors pre-petition

and that the Credit Suisse loan was a fraudulent transfer.  Complaint in Intervention,

¶ 3.  Because the determination of the consolidated adversary proceeding could affect

his own rights and liability, Appellant filed a Motion for leave to file a complaint in intervention in the consolidated adversary proceeding on March 16, 2009 and after that motion was granted, filed a complaint in intervention against the Debtors and the UCC on March 24, 2009. Dkt No. 38, Apdx. 02322.

On March 24, 2009, Appellant filed a Complaint in Intervention against the Debtors and the UCC in Adversary Proceeding 09-00014.  *Id.*  The Bankruptcy Court refused to continue the trial of the adversary proceeding, ruling that the issues in the adversary proceeding had to be resolved prior to the Plan confirmation.  *See* March 27, 2009 Order Denying Continuance of Adversary Proceeding, Dkt. 62, Apdx. 02338.

The Complaint in Intervention pled five causes of action: (1) a declaration that and claim for breach of fiduciary duties was barred by Montana law, (2) that the Credit Suisse loan to the pre-petition Debtors was not a fraudulent transfer, (3) that Appellant was released by the pre-petition debtors from any and all claims through August 2008, (4) that Appellant did not breach any fiduciary duties to the Debtors and (5) that Appellant owed no duties to any of the Debtors' creditors.  Complaint in Intervention, pp. 14-15.

The UCC filed an Answer and Counterclaim against Appellant on April 3, 2009.Dkt. 98, Apdx. 02343.  In the Counterclaim – for the very first time – the UCC sought to hold Appellant personally liable for $209 million of the $375 million Credit

Suisse loan as a fraudulent transfer, hold him liable as an alter ego of BGI – the recipient of the $209 million, and for breach of fiduciary duty to the Debtors. Despite a new Counterclaim asserted against Appellant seeking hundreds of millions in damages from him personally, the bankruptcy court refused to continue the trial, refused to permit Appellant time to take any discovery, and refused to continue any pretrial dates.[1]  Because the proposed Pretrial Order was due on April 27, 2009 and the parties could not agree on the contents, Appellant submitted his own Pretrial Order on April 27, 2009. Dcket No. 241.  The bankruptcy court adopted a modified version of the UCC's Pretrial Order and rejected Appellant's Pretrial Order.

By refusing to adopt Appellant's Pretrial Order, the bankruptcy court intentionally eliminated – without any notice or hearing – Appellant's affirmative defenses to the UCC's Counterclaims that would establish not only the liability of Edra Blixseth and CrossHarbor Capital Partners, LLC for any damages that any creditor may have suffered, but establish that the Chapter 11 filing itself was a bad faith filing designed to allow CrossHarbor to purchase the Debtors for a fraction of their worth.  April 29, 2009 Hearing Transcript, pp. 11-14, Apdx. 02438

---

[1]  In its June 11, 2009 Order on Appellant's Motions to dismiss the UCC's counterclaims, the bankruptcy court dismissed its failure to give Mr. Blixeth a semblance of procedural due process by stating that Appellant was aware that the UCC "had its sights on him in early February. Accordingly, Blixseth had just as much time as the other parties to prepare for trial."  June 11, 2009 Order, p. 33. Thus, even though the UCC did not name him as a defendant until April 3, 2009, Blixseth should have been preparing for trial as if he was named as a defendant simply because the UCC "had its sights on him . . ."

While the parties were taking discovery and preparing for trial, trial commenced on April 20, 2009, literally seventeen days after the UCC filed its $200 million counterclaim against Appellant.  Trial then adjourned and continued on April 29, 2009 for six days.  Trial was again adjourned and on June 11, 2009 – 9 days after the bankruptcy court confirmed the Third Amended Reorganization Plan – the bankruptcy court continued the trial to a new date to be set at some point in the future.  Dkt. 295, Apdx. 03419.

The bankruptcy court refused to allow Appellant to present evidence on whether the Chapter 11 case itself was a bad faith filing.  April 29, 2009 Hearing Transcript, p. 12.  However, the bankruptcy court then accepted Appellant's counsel's specific offer of proof on the bad faith issue.  April 29, 2009 Hearing Transcript, pp 21-29.  According to the Offer of Proof, but for the bad faith collusion between his ex-wife, Edra Blixseth and a creditor, CrossHarbor Funding, the Debtors could have and would have been sold as an ongoing concern for in excess of $400 million to CrossHarbor.  Had that sale been consummated, all creditors would have been paid in full and no bankruptcy proceedings would have been necessary.  *Id.* Instead, Edra Blixseth and CrossHarbor conspired to prevent that sale and by the ruse of a $35 million loan to Edra Blixseth that both parties knew could never be repaid, secured by her interest in BGI.  When Edra Blixseth defaulted on that loan, CrossHarbor was able to obtain all of the Debtors (owned by BGI) for $35 million,

driving the Debtors into a Chapter 11 reorganization.  Any damages suffered by *any*

creditor is therefore the direct and proximate result of Edra Blixseth's and

CrossHarbor's collusion.

## ARGUMENT

## I.

## THE BANKRUPTCY COURT ERRED IN CONFIRMING A PLAN CONTAINING EXCULPATORY CLAUSES AND RELEASES IN FAVOR OF THIRD PARTIES

The exculpation provisions of the Third Amended Plan, Section 8.4, Apdx

01541, are extremely broad and provide releases for numerous non-debtors, who are

liable to Mr. Blixseth for at least indemnity if not breach of fiduciary duty and

outright fraud,  particularly Edra Blixseth, CrossHarbor Capital and Stephen Brown.

The provisions run afoul of existing Ninth Circuit precedent and are improper.

A.    The Plan Improperly Exculpates Cross  Harbor And Edra Blixseth

As set forth in Appellant's Complaint in Intervention, in his Affirmative

Defenses asserted in response to the UCC's counterclaim, and in Appellant's Offer of

Proof to the bankruptcy court on April 29, 2009, these individuals are potentially

liable to Appellant for at least equitable indemnity for their complicity in putting the

Debtors into a collusive bankruptcy in order for CrossHarbor to obtain control over

the Debtors at a fraction of their value.

–16–

B.     The Plan Improperly Exculpates Brown.

    1.     **Stephen Brown's Extensive Actual Conflicts Of Interest.**

Stephen Brown, chairman of the UCC and Appellant's lawyer handling the Credit Suisse loan in 2005, has had an ongoing breach of his fiduciary duties to Appellant *during* the pendency of the Chapter 11 case.[2]  By his own admission, he continued to represent Mr. Blixseth on matters directly related to this bankruptcy after the petitions were filed on November 8, 2008.  May 6, 2009 Tr. p. 1518-20. Apdx. 02800-02802. The extent of the conflict literally shocks the conscience.

For instance, Brown wrote the September 30, 2005 Opinion Letter approving the Credit Suisse loan, including the payout to BGI, on which Mr. Blixseth was sued by the UCC.  Apdx. 03007.  He affirmed that it was his opinion that the loan transaction as structured was not a breach of fiduciary duty by Blixseth.  May 6, 2009 Tr. 1532, Apdx. 02814.  Shocking as leading the charge by the UCC against his client based on the theory that the legal opinion letter that Brown wrote *for Mr. Blixseth* was false is, the Brown conflict is much more extensive.   Brown represented Mr. Blixseth and the Yellowstone Club in the *LeMond* litigation  and had full knowledge

---

    [2]  Brown has liability to Appellant for egregious breaches of fiduciary duty to Appellant by, among other things, taking a directly adverse position to his client. A full recitation of the extensive conflicts of interest is set forth in the Blixseth Declaration in Support of his Motion to Dismiss based on Brown's conflicts of interest, Apdx. 02370.

of the litigation  issues involving the $209 million payout to BGI as early as March

2006.

Brown also represented Mr. Blixseth in the settlement of *LeMond* and in

connection with Blixseth's Marital Settlement Agreement ("MSA"), and was

instrumental in getting general releases for Mr. Blixseth from not only Edra, but all of

the Yellowstone entities and BGI, which was transferred to Edra Blixseth as part of

the settlement negotiated by Brown and included in Mr. Blixseth's Marital Settlement

Agreement with Edra Blixseth.  *See* Apdx. 02905.  Although the UCC action against

Mr. Blixseth was allegedly being discussed as early December 2008 by Brown and

the UCC, as referenced in Patten's January 16, 2009 email, Apdx 03706.   Brown

billed almost $90,000 for his work on the MSA containing the releases from May

through December  2008 – a mere two to seven months before the suit was filed *on*

*the identical issues Brown represented Mr. Blixseth on in obtaining the releases*.

Apdx. 02792- 02794.  Brown's representation was extensive –  Brown and his firm

worked closely with Mr. Blixseth and billed over 300 hours on the MSA issues alone.

Apdx. 02791-2794 ("I played a pretty extensive role in that process, yes.").  He

represented Mr. Blixseth in a mediation with Edra Blixseth where the releases

relating to, among other things, the Yellowstone entities and BGI were hammered

out.  Apdx. 02796. He consulted with Mr. Blixseth's divorce lawyer on Mr.

Blixseth's behalf to insure that the releases that Brown handled were protected from this bankruptcy.  May 6, 2009 Tr. 1519-20, Apdx. 02801.

According to the privilege log produced at the adversary proceeding trial, Apdx. 03014, Brown had approximately 400 email communications with the UCC. Although the UCC contended that Brown was not serving as a lawyer on the UCC, the privilege log contends that Brown's communications with the UCC, *at the same time Brown was representing Blixseth on the same issues,* were attorney-client privileged.  Apdx. 02809.  The bankruptcy judge still refused to turn the emails listed on the privilege log over for Mr. Blixseth's review even though Brown was Blixseth's lawyer right through the initial days of trial.  Apdx. 02813. Debtor's attorney, James A. Patten, summed the issue  best on behalf of the UCC and the Debtor, who were then acting and communicating with joint interests, when he wrote on January 16, 2009:

> **Moreover, if, as it appears, Steve was involved In the Credit Suisse loan and the subsequent transactions, Steve has a conflict of interest. Will he now be using knowledge he gained as attorney for YMC, YD, BGI, Tim or Edra? He's the chairman of the entity suing BGI, and we all suspect there will be claims leading to Tim and Edra. This seems to be a huge problem to me. I can look up the rule of professional conduct if you want me to. but I recall that it violates the rules if an attorney uses information gained while representing someone against that someone later.**

Apdx. 03706.

Brown's responding  January 16, 2009 email to James Patten is an

unambiguous admission that he is using information gained from his representation

of Mr. Blixseth on behalf of the UCC and directly against Mr. Blixseth's interests. In

the email, Brown attempts to minimize his work for Mr. Blixseth, and argues that he

should remain on the UCC "because there are many facts that I know better than

almost anyone else about the intricacies of the various agreements that have been

struck over the years," *i.e.*, information he gained from Blixseth while serving as

Blixseth's attorney.  Apdx. 03706.

Remarkably, the attorneys for the Debtor, met with Brown before his

deposition and contrived a defense that Brown's opinion letter did not protect Mr.

Blixseth because Brown allegedly did not know about the exact use of the $209

million dollars, but which he admittedly knew about when he wrote the opinion

letter.  *See* Brown Depo., pp 22-45, Apdx 03732-03755.  Incredibly, the Debtor

attorneys met with Brown on this subject *in March - April - 2009, just weeks before*

*the trial started in order to answer interrogatories, which they falsified when Brown*

*was still representing Blixseth*.  Brown admitted that the interrogatory answers were

inaccurate.  Apdx 03929-03955; Adv. Proc. Trial Ex. 5, Apdx 03948.

2.   **Based On Those Facts, The Releases Cannot Exculpate Brown From**
     **Claims That Blixseth Has Arising During The Bankruptcy.**

The Montana Rules of Professional Conduct, 1.6, 1.8-1.10 squarely prohibit

Brown's conflicts.  Bankruptcy court does not alter his duties to his client.  "A

creditors' committee stands as a fiduciary to the class of creditors it represents. Its principal function 'is to advise the creditors of their rights and the proper course of action in the bankruptcy proceedings.'" *In re Caldor, Inc.-NY*, 193 B.R. 165, 169 (Bankr. S.D.N.Y. 1996).  A professional employed to represent a committee "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b).  *In re 3dfx Interactive, Inc.*, 2006 Bankr. LEXIS 1498 (Bankr. N.D. Cal. June 29, 2006) (error to confirm plan before resolving issue of whether attorney for creditor's committee had a conflict).  If a creditor serving on the committee has an impermissible conflict of interest, it may give rise to a breach of fiduciary duty.  *In re Fas Mart Convenience Stores, Inc.*, 265 B.R. 427, 432 (Bankr. E.D. Va. 2001).   The issue of whether a relationship is "fiduciary" is a question of  law, reviewed *de novo*.  *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986).

Although Brown was not a professional retained by the UCC, he was in an arguably *worse* conflict, as he was not only an attorney who represented Appellant in connection with the issues in the Adversary Proceeding, but head of the UCC in suing his client.  "A lawyer may not represent a client when the representation involves a conflict of interest with any other position that the attorney holds or represents."  *In Re Mortgage & Realty Trust*, 195 B.R. 740, 751 (Bankr. C.D. Cal. 1996).  *See also*, Mont. R. Prof. Conduct, 1.8-1.10. The most important purpose of

the rule against conflicts of interest is to preserve confidential information received in the prior fiduciary relationship. *Id.* If there is a reasonable probability that confidential information was received which would be relevant in a later adverse representation, a substantial relationship is presumed. *See, e.g., Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). Moreover, Brown's duty of full disclosure to the UCC directly conflicts with his duty to Blixseth of full disclosure and preservation of privileged communications. May 6, 2009 Tr. 1527-28, Apdx. 02809-02810.

Conflicts are not limited – as the bankruptcy court wrongly believed in excluding evidence on that issue – to a purely attorney-client relationship between Brown and the UCC. *Trone*, 621 F.2d at 1002. While the most typical application of this rule occurs where the conflicting interests relate to different clients, the rule is much broader. *Id.* In fact, in *Mortgage Realty*, the attorney's fiduciary duties as a <u>member</u> of the board of trustees of a real estate investment trust created the conflict with his fiduciary duties to his former client. *Mortgage Realty*, 195 B.R. at 751 ("Professional responsibilities do not turn on whether a member of the State Bar acts as a lawyer.").

Instead, "fiduciary duties undertaken as a member of a board of directors or board of trustees are included within the scope of an attorney's relationships that may give rise to a disqualifying conflict of interest under this rule." *Id.* Such a conflict

may arise from the attorney's own interests, or from fiduciary duties of any sort that the attorney has undertaken.  *Id.*  Thus, once a substantial relationship is shown between the prior fiduciary relationship and the current fiduciary relationship, the court must conclusively presume that the attorney possesses confidential information. *Mortgage & Realty Trust*, 195 B.R. at 752.

The fiduciary duties that Brown has to the creditors as chairman of the UCC directly conflict with the fiduciary duties owned to Appellant, even if Mr. Brown was not serving in the capacity of an attorney for the UCC.  As the court held in *3dfx*, "without a resolution of all the conflict issues, no determination of good faith is possible and the . . . . plan is unconfirmable as a matter of law."  *Id.*

C.    The Bankruptcy Court Therefore Cannot Release Claims Against A Non-Debtor.

Whether a bankruptcy court has the power to release claims against a non-debtor is a question of law reviewed *de novo.  In re Lowenschuss*, 67 F.3d 1394, 1401-2 (9th  Cir. 1995).  The bankruptcy court's confirmation of the broad exculpation clauses that shield conduct of third parties such as Stephen Brown, the Unsecured Creditors Committee, Edra Blixseth, Cedit Suisse, Cross Harbor, and other non-debtors is in direct contradiction to the established law of the Ninth Circuit. In *Lowenschuss*, the Ninth Circuit, reviewing broad release provisions in a Chapter 11 plan, held:

The bankruptcy court lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Pursuant to 11 U.S.C. § 524(a), a discharge under Chapter 11 releases the debtor from personal liability for any debts. Section 524 does not, however, provide for the release of third parties from liability; to the contrary, § 524(e) specifically states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

The Ninth Circuit has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors. *In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir.1989); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985); *Commercial Wholesalers, Inc. v. Investors Commercial Corp.*, 172 F.2d 800, 801 (9th Cir.1949); *see also In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 77 (9th Cir. BAP 1994) (holding reorganization plans which proposed to release non-debtor guarantors violated § 524(e) and were therefore unconfirmable); *In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 614-17 (9th Cir. BAP 1990) (finding that a reorganization plan provision which enjoined creditors from proceeding against co-debtors violated § 524(e)); *In re Keller*, 157 B.R. 680, 686-87 (Bankr.E.D.Wash.1993) (refusing to confirm a reorganization plan that compelled a creditor to release liens against a non-debtor's property).

In *American Hardwoods*, 885 F.2d at 625-26, and confirmed in *Lowenchuss*, the Ninth Circuit explicitly rejected the argument that the general equitable powers bestowed upon the bankruptcy court by 11 U.S.C. § 105(a) permit the bankruptcy

court to discharge the liabilities of non-debtors.  Noting that "section 105 does not

authorize relief inconsistent with more specific law," the Ninth Circuit concluded

"the specific provisions of section 524 displace the court's equitable powers under

section 105 to order the permanent relief [against a non-debtor] sought by [the

debtor]."  *Id.* at 625-26.  The Third Amended Plan was thus not confirmable with its

exculpatory provisions and they are legally unenforceable.

**II.**

**THE COURT ERRED IN ADOPTING FINDING OF DEBTORS' "GOOD
FAITH" WHEN DEBTORS' BAD FAITH IS A PENDING IN ADVERSARY
PROCEEDING**

A.     The Bankruptcy Court's Finding Of Good Faith Was Improper Because It
       Failed To Consider The Debtors' Prepetition Conduct.

In approving the Plan, the bankruptcy court made an express finding of "good

faith," and specifically referred to the still- incomplete and rushed Blixseth adversary

proceeding as support for Finding of Fact No. 26 that Appellant "offered no credible

evidence of bad faith to this Court at the Confirmation Hearing or otherwise," and

incorporated this Finding into Conclusion of Law No. 39(l) – apparently  attempting

to get a surreptitious ruling on Appellant's contentions of "bad faith" in the adversary

proceeding.  In doing so, the bankruptcy court focused solely on the "bad faith"

factors in 11 U.S.C. § 1129(b) relating to the *proposal* of a plan, and erroneously

ignored the factors constituting a "bad faith" *filing*, pursuant to 11 U.S.C. § 1112(b).

Logically, if the *case* was not filed in good faith, a plan proposed to effectuate the

purposes of the bad faith filing cannot be in "good faith."  *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987).   Because the issues giving rise to a finding that the bankruptcy was filed in bad faith are four-square within the matters currently being litigated in the Blixseth Adversary proceeding, it was error to make a good faith finding prior to the conclusion of the adversary proceeding.

B.     The Bankruptcy Court Improperly Allocated The Burden Of Proving Bad Faith On Appellant.

Section 1129 prohibits a court from accepting a reorganization plan which has not been proposed in good faith. *In re Marshall*, 298 B.R. 670, 681-682 (Bankr. C.D. Cal. 2003), citing 11U.S.C. §1129(a)(3).   "The debtor had the burden of proving the petition was filed in good faith. *In re ACI Sunbow, LLC*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997).  *See also*, *In re Chinichian*, 784 F.2d 1440, 1444 (9th Cir. 1986) (debtor has burden of proving good faith of proposed plan).

In *Serdy v. Castello*, 123 B.R. 466 (BAP 9th Cir. 1991), the bankruptcy court stated in its opinion confirming a Chapter 13 plan that "the creditor must muster some other evidence of bad faith."  The Bankruptcy Appellate Panel reversed confirmation of the plan because it could not be determined how bankruptcy court allocated burden of proof.  In this case, the bankruptcy court similarly stated "Blixseth offered no credible evidence of bad faith to this court . . .," Finding of Fact No. 26 – virtually the same language as that already rejected by the Bankruptcy Appellate Panel.   Thus, because it cannot be determined how the bankruptcy court allocated the burden of proof, the order confirming the Plan must be reversed.

C.   The Bankruptcy Court Committed Reversible Error By Failing To Consider The Debtor's Prepetition Bad Faith In Determining "Good Faith" Under § 1129.

The bankruptcy court improperly refused to consider the Debtor's prepetition bad faith conduct and whether the filing of the Chapter 11 petition was in bad faith, stating that the Debtors' prepetition conduct was irrelevant to whether the Plan was proposed in good faith.  In doing so, the bankruptcy court erred as a matter of law. "The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988).  "It seems unquestionable to us that the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." *In re Natural Land Corp.*, 825 F.2d at 298. "The taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal, and the possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 381 (8th  Cir. 2000).  "The debtor's filing was a bad faith filing regardless of whether the debtor might be able to reorganize. . ." *ACI Sunbow*, 206 B.R. at 225, citing *Natural Land*.

By finding that the Plan was proposed in good faith simply because a successful reorganization was possible, the bankruptcy court ignored the interplay

between § 1129(b) and §1112(b) and committed reversible error.[3]  Under 11 U.S.C. § 1112(b), a bankruptcy court may dismiss a chapter 11 case "for cause." *In re Marsch*, 36 F.3d, 825, 828 (9th  Cir. 1994).  A filing lacks good faith if it is filed in an attempt "to unreasonably deter and harass creditors" and to "achieve objectives outside the legitimate scope of the bankruptcy laws." *Id*.  The determination of whether a chapter 11 case was filed in good faith "depends on an amalgam of factors and not upon a specific fact." *In re Marsch*, 36 F.3d at 828 (quoting *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)), although consideration of any specific factor is unnecessary.  *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394. "Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions.'" *Id.* (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984). The ultimate determination of whether a chapter 11 case was filed in good faith is "based on the totality of the circumstances." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002).  *In re Marshall*, 403 B.R. at 689-690.

In this case, in his Adversary Proceeding, Appellant contends that the reorganization plan itself is the conclusion of Edra Blixseth's and CrossHarbor's pre-bankruptcy plan to put a solvent debtor into a Chapter 11 so that CrossHarbor could

---

[3]  As the bankruptcy court stated in its Order denying a Stay Pending Appeal, "A plan proposed in good faith is defined as one that satisfies the purposes of the Bankruptcy Code.  Blixseth's generalized allegations of misconduct of parties prior to the bankruptcy is irrelevant to the test of good faith." Order, p. 9 (emphasis added).  Thus, it is without dispute that the bankruptcy court erred as a matter of law by erroneously concluding that the Debtors' pre-petition conduct was *irrelevant* to determining good faith.

acquire the Debtor for a fraction of the $405 million that the certified audited

financials from KPMG showed was the Debtors' value prior to Appellant turning

over the control of the Debtors to Edra Blixseth on August 13, 2008 as part of their

Marital Settlement Agreement.  Blixseth's Offer of Proof, April 29, 2009 Hearing

Transcript, pp. 20-29.[4]  By refusing to even recognize that the prepetition Debtors'

bad faith filing – if proven – would negate "good faith" in proposing the Plan, the

bankruptcy court committed reversible error.

> While we give wide latitude to a bankruptcy court in its weighing of
> factors for approval of a plan compromise, that discretion does not
> extend to the circumstance where it clearly misconceives the law.
> [citation omitted] When a court misconceives the law on a material
> issue, such an error infects the entire process with potential inequity,
> rendering the result of that process flawed.

*In re Arden*, 176 F.3d 1226, 1230 (9th Cir. 1999) (reversing bankruptcy court's

confirmation of Chapter 11 plan for failing to consider factor).  "We cannot rubber

stamp the compromise and the Plan knowing that the court failed to consider a

---

[4]  The allegations of the Complaint in Intervention,  Appellant's affirmative
defenses to the UCC Counterclaim and his offer of proof must, considering that the
trial is not yet concluded, be accepted as true for the purposes of this appeal.
*Aspen Limousine Servs. v. Aspen Limousine Serv.*, 193 B.R. 325, 338 (D. Colo.
1996)("allowing parties to be heard through offers of proof, under certain
circumstances, may be appropriate 'so long as the court is assuming the truth of
what is offered and not attempting to resolve issues on conflicting offers of
proof.'").  Thus, the bankruptcy court additionally erred by failing to assume the
truth of the Offer of Proof in confirming the Plan.  The issue is therefore whether if
proven, would the affirmative defense or facts set forth in the Offer of Proof
support a finding of bad faith pursuant to § 1112(b).  This Court must answer that
question in the affirmative.  If the Chapter 11 case was a bad faith filing, then the
Plan cannot be transmogrified into a "good faith" proposal.

material factor in its calculus, nor should we attempt to weigh that factor ourselves."
*Id.* Thus, despite the deference accorded to the bankruptcy court in approving a
reorganization plan, "an exercise of discretion based on an erroneous interpretation of
the law can be freely overturned." *Id.* at 1228.

D.   The Bankruptcy Court Erred In Making Findings On Good Faith When That
     Issue Remained Open In Appellant's Adversary Proceeding.

Confirmation of a chapter 11 plan obviously requires the court to find that the
plan has been proposed in good faith. 11 U.S.C. § 1129(a)(3). As stated in *In re 3dfx
Interactive, Inc.*, 2006 Bankr. LEXIS 1498 (Bankr. N.D. Cal. June 29, 2006), "based
on the information currently before this court, there appears to be a serious question
regarding whether this court could make that good faith finding." *Id.* at 18-19.
"With respect to plan confirmation, [g]ood faith is assessed by the bankruptcy judge
and viewed under the totality of the circumstances." *In re Jorgensen*, 66 B.R. 104,
108-09 (9th Cir. BAP 1986). The approval of a Plan is subject to Part VII of the
Federal Rules of Bankruptcy Procedure to afford all interested parties adequate time
to develop information going to the "confirmability" of a reorganization plan. *In re
3dfx Interactive, Inc.*, 2006 Bankr. LEXIS 1498, at 20-21.

In the adversary proceeding, without a resolution of all the issues raised in
Appellant's adversary proceeding, no determination of good faith is possible and the
plan is unconfirmable as a matter of law.[5] *In re 3dfx Interactive, Inc.*, 2006 Bankr.

_____

[5] Indeed, the bankruptcy court acknowledged this fact in its March 27, 2009
Order Denying Appellant's Motion for a Continuance, stating "The issues in this
proceeding need to be resolved prior to the hearing on confirmation of Debtors'

LEXIS 1498 at 18-19; *In re Dennis Ponte, Inc.*, 61 B.R. 296, 299 ( 9th Cir. BAP

1986) (reversing confirmation of a Chapter 11 Plan where creditor's counterclaim

was pending that could result in administrative claim).  Because the bankruptcy court

failed to consider the consequences of Appellant's potential success on his claims in

the adversary proceeding, "it clearly erred in failing to discharge its obligations under

section 1129(a)(11)."  *In re Harbin*, 486 F.3d 510, 519 (9th Cir. 2007)(reversible error

to approve plan for failing to consider affect of pending litigation on plan).

Finally, if the bankruptcy court was intent upon rushing to confirm the Plan

despite the obvious effect that the adversary proceeding might have on the Plan, the

bankruptcy court was obligated to assume as true for the purpose of the confirmation

hearing Appellant's Complaint in Intervention, his Answer and affirmative defenses

to the UCC counterclaim and his Offer of Proof in the record.[6]  *Aspen Limousine*, 193

B.R. at 338.

Allowing parties to be heard through offers of proof, under certain

circumstances, may be appropriate "so long as the court is assuming the truth of what

is offered and not attempting to resolve issues on conflicting offers of proof."  *Aspen*

*Limousine*, 193 B.R. at 338.  Because the bankruptcy court refused to let Appellant

_____

Chapter 11 Plan."

[6] As set forth in the Statement of Facts, the bankruptcy court refused to
allow Appellant to present evidence in the adversary proceeding on the Debtors'
prepetition collusion and bad faith filing.  April 29, 2009 Transcript, p. 12.  The
bankruptcy court then accepted Appellant's counsel's specific offer of proof on the
bad faith issue.  April 29, 2009 Hearing Transcript, pp 21-29.

present evidence on the bad faith filing of the Chapter 11 case or complete the trial, the bankruptcy court was therefore *required* to assume the truth of Appellant's Offer of Proof and allegations. *Id.* Since the bankruptcy court did not assume the truth of the offer of proof – and instead, improperly placed the burden on Appellant to prove bad faith while precluding him from presenting such evidence at trial, the bankruptcy court could not possibly evaluate the Debtors' good faith in either the Chapter 11 filing or in proposing the Plan and therefore committed reversible error. *Id.*

### III.

### THE BANKRUPTCY COURT ERRED IN APPROVING THE CREDIT SUISSE SETTLEMENT INCORPORATED IN THE PLAN CONFIRMATION ORDER

Fed. R. Bankr. P. 9019 requires that notice of a settlement "shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 . . . ." A hearing on a settlement cannot be held without at least 20 days notice of the hearing, unless the court for cause shown directs that notice not be sent. Fed. R. Bankr. P. 2002(a)(3). Under Mont. L.B.R. 9014, the motion must contain a notice informing parties that they have a right to object and request a hearing. In a Chapter 11 case, the debtor-in-possession serves as the trustee, 11 U.S.C. § 1107(a) and had the duty of providing the required notice of the settlement.

Failing to provide advance notice of a proposed settlement nullifies approval of a settlement. As held in *In re Masters, Inc.*, 149 B.R. 289 (E.D.N.Y.1992):

> The purpose of the procedural rules governing notice to creditors is to allow those parties with a pecuniary interest in the settlement to have an

opportunity to be heard and to object if they find it unsatisfactory. [citation omitted] Where creditors have expressed sufficient interest in a bankruptcy case to have their names added to the service list, this Court finds that such creditors have a right to actual notice pursuant to Rule 9019(a) and to make objections to any proposed settlement agreement prior to final approval by a bankruptcy judge.

The notice requirement in Rule 9019(a) cannot be ignored merely because a proposed settlement is made in open court during trial rather than on papers submitted to the bankruptcy court prior to trial. Certainly the plain language of the Rule makes no such distinction. *Cf. In re Thompson*, 965 F.2d at 1139-40. Moreover, notice to the Creditors' Committee does not waive notice to the individual creditors on the service list, nor can a bankruptcy judge eliminate the Rule 9019(a) notice requirements even if he believes that his ultimate approval of the proposed agreement is a virtual certainty. Accordingly, because various Mars' creditors have never been notified of the proposed Mars/Masters settlement agreement, this Court finds that the Massachusetts bankruptcy court never formally approved that agreement.

As stated by the Court in *In re Almengual*, 301 B.R. 902 (Bkrtcy. M.D. FL 2003), "Adequate notice to parties in interest is a requirement central to the otherwise expedited administration of bankruptcy cases."

Although the bankruptcy courts have great latitude in authorizing a compromise, they may only be approved if it is "fair and equitable" in accordance with the standards of *In re A & C Properties*, 784 F2d 1377 (9th Cir. 1986). See *In re Duncan*, 2009 WL 981162 (Bankr. D.Mont. 2009). It is customary for the Montana Bankruptcy Court to provide an analysis of the *A & C Properties* requirements, including the requirement that the settlement be in the "paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.*

–33–

In fact, "The purpose of Rule 9019 is to protect the interests of others who are not parties to the agreement whose rights may be affected." *In re Nelson Co.*, 117 B.R.813, 820 (Bankr. E. D. Pa. 1990), *affd*,  959 F.2d 1260 (3rd Cir. 1992).  In a decision reviewing a motion to approve a settlement in a Chapter 11 case in which notice was actually given but was found to have deficient information and to have been sent to a limited number of creditors, the Court held that the "dissemination of the notice of settlement was insufficient under the bankruptcy rules".  *In re Shannopin Mining Co.*, WL31002883 (W.D.Pa. 2002).

The YC Chapter 11 Plan confirmation centered upon and was made possible only by settlement reached between the debtor-in-possession, the unsecured creditors committee, and Credit Suisse that was announced for the first time at the confirmation hearing.

Although the settlement affected all of the creditors in the case and especially Appellant,  there was no advance notice given to any creditor or party in interest by the debtors-in-possession, the Bankruptcy Court or anyone else about the settlement. Indeed, there was no motion filed or made to approve the settlement prior to or at the confirmation hearing.  The only persons who knew about the settlement were the parties who negotiated it.  The settlement agreement was not disseminated to creditors and parties in interest and it was not filed with the Court.  The settlement was not stated in the second Chapter 11 Plan up for confirmation. The Court did not

–34–

make any ruling shortening or excusing notice of the settlement hearing.   Instead, at

the May 18, 2009 confirmation hearing, the Court was given the term sheet for the

settlement, which was not made an exhibit at hearing, received surprise testimony

and argument about the settlement, and announced after a question from Credit

Suisse's lawyer, Mr. Chehi, about whether the Court would be conditionally ruling on

approval of the settlement terms:

> I am glad you brought that up.  I just kind of overlooked it. Based upon
> Rule 9019, my consideration of the testimony, of the term sheet,
> negotiations that went into that, and based upon the - (inaudible) - property factors
> the settlement set forth in the term sheet and its attachments is approved.  We'll issue
> an order to that effect.

The approval of the Credit Suisse settlement was thus accomplished in

complete disregard of the Bankruptcy Rules and Appellant's rights of due process.

## CONCLUSION

For the reasons set forth above, Appellant asks this Court to reverse the

bankruptcy court's Order approving the Third Amended Reorganization Plan and the

Findings of Fact and Conclusions of Law.

Dated: August 21, 2009                    Respectfully Submitted,


By:   /s/ Michael J. Flynn_____          By:___/s/ Joel E. Guthals_____
          Michael J. Flynn                              Joel E. Guthals, Attorney No. 589

*Attorneys for Timothy L. Blixseth, Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the forgoing Appellant's Opening Brief contains 35 pages with 10,136 words, exclusive of cover page, table of contents, signature lines, certificate of compliance, and certificate of service, and is typewritten in a 14 point font size without erasures or materially defacing interlineations, with page size of 8.5 x 11 inches.

Guthals, Hunnes & Reuss, P.C.


By:   /s/ Joel E. Guthals
      Attorneys for Timothy L. Blixseth,
      Appellant

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify under penalty of perjury that on _____ or as soon as possible thereafter, copies of the foregoing motion was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same and that in addition service by mailing a true and correct copy, first class mail, postage prepaid, was made to the following persons/entities who are not ECF registered users: None.

**Guthals, Hunnes & Reuss, P.C.**
**P.O. Box 1977**
**Billings, MT  59103-1977**


By:___/s/ Joel E. Guthals_____
    Attorneys for Timothy L. Blixseth, Appellant