James A. Patten
**Patten, Peterman, Bekkedahl & Green, PLLC**
2817 2nd Avenue North, Suite 300
Billings, MT 59101
Telephone (406) 252-8500
Email: japatten@ppbglaw.com
Attorney for Yellowstone Mountain Club, LLC

William D. Lamdin, III
Benjamin P. Hursh
**Crowley Fleck, PLLP**
305 South 4th Street East, Suite 100
PO Box 7099
Missoula, MT 59807-7099
Telephone: (406) 523-3600
Email: bhursh@crowleyfleck.com
Attorneys for New CH YMC Acquisition, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| TIMOTHY L. BLIXSETH,<br><br>Appellant,<br><br>v.<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC, YELLOWSTONE DEVELOPMENT LLC, BIG SKY RIDGE, LLC, YELLOWSTONE CLUB CONSTRUCTION CO., LLC,<br><br>Appellees. | Bankruptcy Case No.: 08-61570-11 (Jointly with 08-61571, 08-61572-11, 08-61573-11)<br><br>District Court Case No. 09-47-SEH<br><br>MOTION TO DISMISS APPEAL AS MOOT |

## RELIEF REQUESTED

Appellees Yellowstone Mountain Club, LLC, and New CH YMC Acquisition, LLC, request that the above-captioned appeal be dismissed on mootness grounds. Appellees have contacted counsel for the appellant, Timothy Blixseth, LLP, who advises that Blixseth will be opposing the motion.

Page 1

## FACTUAL BACKGROUND

On November 10, 2008, Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC, (collectively "Debtors") filed for bankruptcy under Chapter 11. (App. 3-6)[1] On February 13, 2009, Debtors filed their first reorganization plan together with a disclosure statement. (App. 390-556) Blixseth objected to the disclosure statement, asserting it did not provide sufficient information. (App. 557-70) Blixseth also subsequently filed a proof of claim for $250,000 based upon his Company Membership. (App. 572-74)

On April 3, 2009, Debtors filed their Second Amended Reorganization Plan. (App. 1494-1548) Blixseth filed an objection to the amended plan asserting, among other things, the plan had not been filed in good faith. (App. 1658-60)

The Bankruptcy Court conducted a hearing on the confirmation of the Second Amended Reorganization Plan on May 18, 2009. (App. 1772-1883) The court did not rule on Blixseth's objection at the hearing. [Dkt. 921 at 4] Instead, the court directed Debtors to modify the terms of the plan to incorporate the terms of a settlement and to reflect other changes that had occurred. (*Id.*)

Debtors filed their Third Amended Joint Plan of Reorganization ("the Plan") on May 22, 2009. (App. 1885-1944) The Bankruptcy Court confirmed the Plan in an order and memorandum decision dated June 2, 2009. (App. 2094-2111, 2113-24) In its memorandum opinion, the court expressly rejected Blixseth's assertion that the Plan had not been filed in good faith. (App 2103-04)

On June 10, 2009, Blixseth filed a Notice of Appeal seeking review of the

---

[1] Unless otherwise noted, references to the record are to the pages of the Appendix submitted with the Opening Brief of Timothy L. Blixseth, Appellant.

court's June 2 rulings confirming the Plan. (App. 2282-86) He subsequently filed a motion to stay, which the court denied. (App. 2288-90, 2292) Blixseth did not seek a stay from this Court.

Since the date Blixseth filed his appeal, numerous events have occurred in the bankruptcy proceedings. Schedule 1.41 to the Plan provided for the purchase of all of the equity interests in the Reorganized Debtors by New CH YMC Acquisition, LLC ("CrossHarbor"). [Dkt. 947-4] Schedule 1.41 further provided that the Reorganized Debtors would retain the Project Assets and that all other estate assets would be transferred to a Liquidating Trust on the Effective Date of the Plan. That sale has now been completed and the Effective Date of the Plan has occurred. Affidavit of Ronald Greenspan ¶ 8.

Shortly after the Effective Date, Debtors filed their First Omnibus Motion for the Allowance of Class 1, Class 2, Class 5, and Priority Tax Claims so that the Disbursing Agent could promptly make disbursements to those claim holders. [Dkt. 1126] The Court granted Debtors' motion in an order entered August 12, 2009, and disbursements to holders of claims allowed by the Court's order have been made. [Dkt. 1175]; Greenspan Aff. ¶¶ 10, 11. To date, over $30 million has been disbursed. *Id.* ¶ 10. Additionally, as called for by the Plan, the Reorganized Debtors executed and delivered their promissory note for $80 million to Credit Suisse for the benefit of the holders of Class 3 and Class 8 claims. *Id.* ¶ 9. That note is secured by a deed of trust on substantially all of the Reorganized Debtors' real property. *Id.* ¶ 3.

In addition, the sale of 100% of the new membership interests in the Reorganized Debtors to CrossHarbor has been completed in accordance with the terms of the Plan. Greenspan Aff. ¶ 12. Further, approved administrative expenses incurred by Debtors and by the debtor in possession lender, CIP Yellowstone

Lending LLC, have been paid from the debtor in possession loan. On September 29, the Bankruptcy Court authorized the payment of numerous trade creditor claims. [Dkt. 1265]

## ISSUE PRESENTED FOR REVIEW

Blixseth asks the Court to reverse or modify the Bankruptcy Court's order confirming the Plan. Blixseth did not obtain a stay, and the Plan has now been substantially consummated, including the sale of the equity interests in Debtors to CrossHarbor and the disbursement of over $30 million in payments to creditors. Is Blixseth's appeal moot?

## ARGUMENT

In *In re Roberts Farms, Inc.*,[2] the Ninth Circuit Court of Appeals recognized that a bankruptcy appeal may be equitably moot when (1) the appellant fails to obtain a stay and (2) there has been a "comprehensive change of circumstances" making it inequitable for the court to consider the appeal.[3] An appeal also may become moot "when events occur that make it impossible for the court to fashion effective relief."[4] Effective relief is impossible if funds have been disbursed to non-parties or if the failure to obtain a stay has permitted such a comprehensive change of circumstances as to make it inequitable to consider the merits of the appeal.[5] In this case, the substantial consummation of the Plan and the

---

[2] 652 F.2d 793 (9th Cir. 1981).

[3] *Id.* at 798; *see also In re Arnold & Baker Farms*, 85 F.3d 1415, 1419 (9th Cir. 1996), *cert. denied*, 519 U.S. 1054 (1997) (appeal of a plan confirmation order may be dismissed as moot if party opposing reorganization plan has failed to obtain a stay pending appeal, and the plan has been substantially consummated).

[4] *In re Focus Media*, 378 F.3d 916, 922 (9th Cir. 2004); *see also In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1171 (9th Cir. 1988); *In re Clarke*, 98 B.R. 979, 980 (B.A.P. 9th Cir. 1989).

[5] *In re Beatty*, 162 B.R. 853, 856 (B.A.P. 9th Cir. 1994).

disbursement of $110 million of the consideration to third parties render Blixseth's appeal moot.

Blixseth has asked the Court to reverse or the Bankruptcy Court's order confirming the Plan. Opening Brief of Timothy L. Blixseth, Appellant at 35. Blixseth asserts the Bankruptcy Court erred in confirming the Plan because the Plan (1) contained improper exculpatory clauses and releases, (2) was not proposed in good faith, and (3) improperly incorporated a settlement between Debtors and their largest creditor, Credit Suisse. *Id.* at 3.

The Bankruptcy Court's decision confirming the Plan cannot now be revisited. Following confirmation, all of the property of the former bankruptcy estate has been transferred, the new owners of the Reorganized Debtors have assumed the management of the real property going forward, the Liquidating Trustee has undertaken his duties to liquidate non-Project Assets, and the Disbursing Agent has commenced disbursements under the Plan. Greenspan Aff. ¶¶ 9-12. The Plan has been substantially consummated and, therefore, in accordance with § 1127 of the Bankruptcy Code, it can no longer be modified.[6]

Debtors, CrossHarbor and all the other parties have substantially changed their positions based on the unstayed Bankruptcy Court Order confirming the Plan. In order to grant the relief requested by Blixseth, the Court would have to undo the Plan. This would not only violate the provisions of 11 U.S.C. § 1127, but would be inequitable, given that CrossHarbor relied upon the terms of the Plan, including the provisions challenged by Blixseth, in making the decision to purchase equity interests in Debtors.[7] Moreover, third parties have received over $100 million in

---

[6] *In re Antiquities of Nevada, Inc.*, 173 B.R. 926 (B.A.P. 9th Cir. 1994).
[7] *See e.g., In re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir. 1987) (claim is moot under § 363 as soon as a lender has relied on the authorization).

consideration distributed based on the Confirmation Order. There is no way the Court can require these creditors to return the property they received and unwind the transaction.

Finally, the Ninth Circuit teaches that this Court should also examine the appellant's diligence in pursuing his rights in evaluating mootness:

> An entirely separate and independent ground for dismissal has also been established because Appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal. The touchstone precedent for this principle is *Valley National Bank of Arizona v. Trustee*, 609 F.2d 1274 (9th Cir. 1979). There our court held that the failure to seek stays coupled with a substantial change of circumstances would justify dismissal of the appeal for lack of equity. We think the thrust of this decision is that it is obligatory upon appellant in a situation like the one with which we are faced to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief (Rule 51, Supreme Court Rules)) if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.[8]

Although Blixseth did request a stay from the Bankruptcy Court, that request was denied, and he did not thereafter seek a stay from either this Court or the Ninth Circuit. Blixseth's failure to obtain a stay, coupled with the substantial change in circumstances, provides yet another justification for dismissal of this appeal.[9]

DATED: October 2, 2009

                                        PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC

---

[8] *Roberts Farms*, 652 F.2d at 798.

[9] *See In re Continental Airlines*, 91 F.3d 553, 562 (3rd Cir. 1996) ("A stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization.").

By  /s/ James A. Patten
James A. Patten
Attorney for Yellowstone Mountain Club, LLC

CROWLEY FLECK, PLLP


By  /s/ Benjamin P. Hursh
William D. Lamdin, III
Benjamin P. Hursh
Attorney for New CH YMC Acquisition, LLC

11988165.1

## CERTIFICATE OF SERVICE

I, the undersigned, certify under penalty of perjury that on October 2, 2009 or a soon as possible thereafter, copies of the foregoing motion was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same and that in addition service by e-mailing or mailing a true anc correct copy, first class mail, postage prepaid was made to the following persons/entities who are not ECF registered users:

E-mail service upon Joel E. Guthals, Attorney for Appellant on October 2, 2009.

/s/ James A. Patten
James A. Patten, Attorney for Appellees