Joel E. Guthals
GUTHALS, HUNNES & REUSS, P.C.
P.O. Box 1977
Billings, MT 59103
Telephone: (406) 245-3071
Facsimile: (406) 245-3074
Email: jeguthals@ghrtlawfirm.com

Michael J. Flynn, Admitted Pro Hac Vice
One Central Plaza, Suite 240
Boston, MA 02108
Telephone: 858-775-7624
Facsimile:  858-759-0711
Email: mike@mjfesq.com

*Attorneys for Appellant TIMOTHY L. BLIXSETH*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| Timothy L. Blixseth,<br><br>     Appellant,<br><br>vs.<br><br>Yellowstone Mountain Club, LLC,<br>Yellowstone Development LLC,<br>Big Sky Ridge, LLC<br>Yellowstone Club Construction Co.,<br> LLC,<br>     Appellees. | Bankruptcy Case Nos. 08-61570; 08-61571; 08-61572; 08-61573<br><br>Appeal to U.S. District Court District Court Case No. CV-09-47-BU-SEH |

## REPLY BRIEF OF TIMOTHY L. BLIXSETH, APPELLANT

# TABLE OF CONTENTS

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   I.    THE ORDER CONFIRMING THE PLAN SHOULD BE REVERSED. 2

       A.    The Proper Standard of Review Is De Novo.. . . . . . . . . . . . . . . 2

       B.    The Bankruptcy Court Erred As A Matter Of Law In Disregarding Mr. Blixseth's Pleadings and Offer of Proof.. . . . . . . . . . . . . . . 4

       C.    The Bankruptcy Court Erred In Holding That The Debtor's Bad Faith Filing Was Irrelevant To Plan Confirmation.. . . . . . . . . . . 5

       D.    The Bankruptcy Court Erred In Placing The Burden of Proving Bad Faith On Mr. Blixseth.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       E.    The Bankruptcy Court Erred in Confirming The Plan While The Adversary Proceeding Was Pending.. . . . . . . . . . . . . . . . . . . . . . 9

   II.    THE EXCULPATORY CLAUSE IS CONTRARY TO LAW. . . . . . . 10

  III.    THE CREDIT SUISSE SETTLEMENT MUST BE REVERSED FOR LACK OF NOTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## CASES

*Aspen Limousine Servs. v. Aspen Limousine Serv.*, 193 B.R. 325, 338 (D. Colo. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*In re 3dfx Interactive, Inc.*, 2006 Bankr. LEXIS 1498 at 18-19. . . . . . . . . . . . . . . . . 7

*In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir.1989). . . . . . . . . . . . . 10

*In re Arden*, 176 F.3d 1226, 1230 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*In re Dennis Ponte, Inc.*, 61 B.R. 296, 299 ( 9th Cir. BAP 1986). . . . . . . . . . . . . . . . 9

*In re Dow Corning Corp.*, 280 F.3d 648, 657 (6th Cir. 2002). . . . . . . . . . . . . . . . . . 10

*In re Enron Corp.*, 326 B.R. 497 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Lowenschuss*, 67 F.3d 1394, 1401-2 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . 10

*In re Madison Hotel Assocs.*, 749 F.2d 410 (7th Cir. 1984). . . . . . . . . . . . . . . . . . . . . 6

*In re Masters, Inc.*, 149 B.R. 289 (E.D.N.Y.1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987). . . . . . . . . . . . . . . . . . 6

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988). . . . . . . . . . . . . 7

*In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D.Pa. 2005). . . . . . . . . . . . . . . . . 5

*In re Rankin*, 320 B.R. 171, 182 (Bankr. D. Mont. 2005). . . . . . . . . . . . . . . . . . . . . . 14

*In re Smith*, 848 F.2d 813, 816 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Serdy v. Castello*, 123 B.R. 466 (BAP 9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . .  10

## STATUTES AND RULES

11 U.S.C. § 1129. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 9

## INTRODUCTION

The appellees have gone astray on virtually every point raised by Mr. Blixseth in the appeal.  First, it is an unremarkable proposition that a bad faith filing of a petition cannot be immunized by a good faith reorganization plan.  The appellees claim the exact opposite.  Moreover, Appellees do not address the fact that the Court approved the Plan *despite* being in the middle of the trial of Adversary Proceeding No. 09-0014, where the very issue of the bad faith filing of the Petition was then being litigated. Appellees also skirted the fact that the Court imposed on Mr. Blixseth the burden of establishing bad faith, and failed to accept Mr. Blixseth's offer of proof at the beginning of the trial as true, although required to do so.  These are legal issues subject to *de novo* review, not, as Appellees contend, by a "clearly erroneous" standard.

Appellees' analysis of the Plan's exculpatory clause, Section 8.4, purporting to exculpate virtually every third party with any connection to the consolidated bankruptcy is equally faulty.  The Plan's  exculpation of Mr. Blixseth's very serious post-petition legal malpractice and breach of

fiduciary duty claims against his former counsel, Steven Brown, cannot be barred.  Credit Suisse, who made what Judge Kirscher called a "predatory" $375 million *non-recourse* loan to the debtor that caused the bankruptcy, then, by virtue of its settlement for which no notice was given, obtained control of the Liquidating Trust that is now suing Mr. Blixseth for $200 million of the non-recourse loan, while at the same time barring Mr. Blixseth from suing Credit Suisse.  Thus, Credit Suisse not only changed the *non*-recourse loan into a recourse loan through its settlement and the Plan, but it prevented Mr. Blixseth from suing it.  To merely state the issue is to establish its inequity.

Finally, Appellees apply the wrong standard of review as "clearly erroneous" to the Court's failure to comply with Rule 9019 when the interpretation of a Rule or a statute is subject to *de novo* review.  Appellees thus understandably give short shrift to Rule 9019's *mandatory* requirements of notice of any settlement all creditors.  For those reasons, the Order confirming the Plan should be reversed.

## ARGUMENT

## I.

## <u>THE ORDER CONFIRMING THE PLAN SHOULD BE REVERSED</u>

A.    <u>The Proper Standard of Review Is *De Novo*.</u>

The Court's decision to confirm a Chapter 11 Plan is a mixed question

of fact and law. "Factual determinations are reviewed under the clearly

erroneous standard, while determinations of law are reviewed de novo."   *In*

*re Andrews*, 155 B.R. 769, 770 (BAP. 9th  Cir. 1993).  Under this standard, as in

*Andrews*, the bankruptcy court's confirmation of the Plan should be

reviewed *de novo* for several reasons.  First, the only relevant factual

determination at issue here is the Court's finding Mr. Blixseth had not met

his burden of establishing that the Plan was proposed in bad faith.  That

inquiry is *not* a true factual issue, but rather, is a question of law, since

Adversary Proceeding 09-0014 is still ongoing and in fact, is set to resume

the week of February 22, 2010.  The allegations of the Complaint in

Intervention,  Appellant's affirmative defenses to the UCC Counterclaim and

his offer of proof therefore must be accepted as true for the purposes of this

appeal.  *Aspen Limousine Servs. v. Aspen Limousine Serv.*, 193 B.R. 325, 338 (D.

Colo. 1996).  The bankruptcy court's finding of "good faith" or lack of "bad faith" must therefore be reviewed under the standard of review applicable to review of summary judgment motions – *de novo* standard of review.[1]

B.    The Bankruptcy Court Erred As A Matter Of Law In Disregarding Mr. Blixseth's Pleadings and Offer of Proof.

Again not addressed by Appellees, the bankruptcy court  erred by failing to assume the truth of the Offer of Proof in confirming the Plan.  On *de novo* review by this Court, the issue is therefore a narrow one – whether if proven, would the affirmative defense or facts set forth in the Offer of Proof support a finding of bad faith pursuant to § 1112(b).  The Court must resolve that question in the affirmative, based on the record before the bankruptcy court. *See e.g.*, Blixseth's Offer of Proof, April 29, 2009 Hearing Transcript, pp. 20-29.  Because the bankruptcy court improperly ignored the allegations in the Adversary Proceeding 09-00014 Complaint in Intervention, the Offer of Proof and Mr. Blixseth's affirmative defenses, the bankruptcy court could

---

[1]  Indeed, the bankruptcy court acknowledged this fact in its March 27, 2009 Order Denying Appellant's Motion for a Continuance, stating "The issues in this proceeding need to be resolved prior to the hearing on confirmation of Debtors' Plan.

not have considered that evidence as true for the purposes of its "good faith"

determination and therefore must be reversed.  By refusing to even

recognize that the prepetition Debtors' bad faith filing – if proven – would

negate "good faith" in proposing the Plan, the bankruptcy court therefore

committed reversible error.  *In re Arden*, 176 F.3d 1226, 1230 (9th Cir. 1999)

("when a court misconceives the law on a material issue, such an error

infects the entire process with potential inequity, rendering the result of that

process flawed," reversing bankruptcy court's confirmation of Chapter 11

plan for failing to consider factor).[2]  "We cannot rubber stamp the

compromise and the Plan knowing that the court failed to consider a

material factor in its calculus, nor should we attempt  to weigh that factor

_____

[2]  This Court should also note the requirement that the Plan be
"feasible." As set forth in counsel for the UCC's recently-filed brief in this
action at Docket No. 1350, of which judicial notice is requested,  the Plan
does not even have enough funds to pay the Professional administrative
claims, and is therefore *actually* infeasible. 11 U.S.C. § 1129(a)(11) requires:
"[c]onfirmation of the plan is not likely to be followed by the liquidation, or
the need for further financial reorganization, of the Debtor or any successor
to the debtor under the plan . . . ."  11 U.S.C. § 1129(a)(11).   In most cases,
feasibility centers around the continuing viability of the debtor's business,
such as the adequacy of the debtor's capital structure and the prospects of a
sufficiently successful operations to enable performance of the provisions
of the plan." *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D.Pa. 2005).

ourselves." *Id.* Thus, despite the deference accorded to the bankruptcy

court in approving a reorganization plan, "an exercise of discretion based on

an erroneous interpretation of the law can be freely overturned." *Id.* at 1228.

C.    <u>The Bankruptcy Court Erred In Holding That The Debtor's Bad Faith</u>

     <u>Filing Was Irrelevant To Plan Confirmation.</u>

Appellees contend that a petition filed in bad faith *can* be immunized

by a "good faith" Plan, relying on a Seventh Circuit case, *In re Madison Hotel*

*Assocs.*, 749 F.2d 410 (7th Cir. 1984).  First, in *Madison*, the Seventh Circuit

affirmed, based on the bankruptcy court's explicit finding that the petition

had been filed in good faith after the complaining creditor had moved to

dismiss the petition as a bad faith filing.  In light of that finding, there was

no need to revisit that issue in another evidentiary hearing at plan

confirmation.  *Id.* at 426.  The facts of *Madison* are obviously significantly

different from the instant case.[3]

Second, whatever the continued viability of *Madison* might be in the

Seventh Circuit, it is not followed in the Ninth Circuit, which follows the

---

[3]  The Seventh Circuit itself has even distinguished *Madison* on this
point.  *See In re Smith*, 848 F.2d 813, 816 (7th Cir. 1988).

Eleventh Circuit's decision in *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987), holding that a good faith plan cannot immunize a bad faith filing. *In re ACI Sunbow, LLC*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997); *Serdy v. Castello*, 123 B.R. 466 (BAP 9th Cir. 1991).[4]  *See also, In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 381 (8th Cir. 2000)("The taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal, and the possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith").  Thus, Appellees are simply incorrect in contending that a "good faith" Plan immunizes a bad faith petition.

Moreover, there is no real doubt that the bankruptcy court determined that Appellees' alleged bad faith filing was irrelevant to whether the Plan was proposed in good faith.  The bankruptcy court explicitly stated in its Order denying a Stay Pending Appeal, "Blixseth's generalized allegations of misconduct of parties prior to the bankruptcy *is irrelevant to the test of good faith*."  Order, p. 9 (emphasis added).  The failure to consider the bad faith filing of the petition in determining confirmation is therefore contrary

---

[4]  *See also, In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988)("The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.").

to law, mandating reversal.  *In re Arden*, 176 F.3d at 1230.

D.    <u>The Bankruptcy Court Erred In Placing The Burden of Proving Bad</u>

      <u>Faith On Mr. Blixseth.</u>

In addition to the error of law in failing to accept Mr. Blixseth's

allegations and offer of proof as true, the bankruptcy court also erred in

placing the burden of proving bad faith on Mr. Blixseth. "The debtor had the

burden of proving the petition was filed in good faith. *In re ACI Sunbow,*

*LLC*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997).

Here, the bankruptcy court stated in Finding of Fact No. 26 that

"*Blixseth* offered no credible evidence of bad faith to this court . . . ," a

finding that is contrary to law given the allegations in Mr. Blixseth's

complaint and Offer of Proof.  With Adversary Proceeding 09-00014 still

ongoing, the proper test was whether Mr. Blixseth presented any allegations

that if proven, would show a bad faith filing. Although Appellees contend

that it is Mr. Blixseth that "conflates" the concepts of bad faith petitions and

bad faith plans, it is actually Appellees that attempt to recast the bankruptcy

court's duty in determining "good faith."  In *Serdy v. Castello*, 123 B.R. 466

(BAP 9th Cir. 1991) – a case directly on point, the bankruptcy court's finding

confirming a Chapter 13 plan that "the creditor must muster some other evidence of bad faith" mandated reversal by the Bankruptcy Appellate Panel because it could not be determined how bankruptcy court allocated burden of proof.  Given the striking similarity between the language rejected by the Ninth Circuit in *Serdy* and the language used by the bankruptcy court in this case, this Court must reverse the confirmation of the bankruptcy court's "good faith" finding.

E.      The Bankruptcy Court Erred in Confirming The Plan While The
        Adversary Proceeding Was Pending.

        Appellees also understandably failed to address the fact that the bankruptcy court should not have confirmed the Plan without resolving the Adversary Proceeding litigating issues directly at issue in the court's determination of whether the Plan was feasible, proposed in good faith or whether various third parties could or should be exculpated from claims by other third parties.  *In re 3dfx Interactive, Inc.*, 2006 Bankr. LEXIS 1498 at 18-19; *In re Dennis Ponte, Inc.*, 61 B.R. 296, 299 ( 9th  Cir. BAP 1986) (reversing confirmation of a Chapter 11 Plan where creditor's counterclaim was pending that could result in administrative claim).  Appellees cannot have it

both ways – either the bankruptcy court had to resolve all disputed issues in the adversary proceeding prior to confirmation or accept all Mr. Blixseth's allegations and offers of proof as true.   *Aspen Limousine*, 193 B.R. at 338. The court's failure to do so is reviewed *de novo* as contrary to law.[5]

## II.

## <u>THE EXCULPATORY CLAUSE IS CONTRARY TO LAW</u>

In the Ninth Circuit, a bankruptcy court has no power to discharge the liabilities of a nondebtor as part of a reorganization plan. *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985).  The broad language of § 524(e), limiting the scope of a discharge so that it "does not affect the liability of any other entity," encompasses this result."  *Id.; In re Lowenschuss*, 67 F.3d 1394, 1401-2 (9th Cir. 1995); *In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir.1989). The Ninth Circuit, joined by the Tenth Circuit, have explicitly rejected other more lenient approaches such as that of the Fourth Circuit, the Sixth Circuit and the Seventh Circuit.  *Id.* at 626.  *Cf. In re Dow Corning Corp.*, 280 F.3d 648,

---

[5]  The court's rush to confirmation caused Mr. Blixseth manifest prejudice.  Post-appeal, Mr. Blixseth obtained numerous documents that Edra had thought were destroyed that tended to show the total control over Edra and the debtors by Byrne prior to filing the bankruptcy – going directly to the bad faith filing issue.

657 (6th Cir. 2002) (discussing split in the Circuits on the power to release non-debtors).  It is therefore not surprising that Appellees do not cite one case from the Ninth Circuit upholding releases of third parties.

Even Appellees' principal case, *In re Enron Corp.*, 326 B.R. 497 (S.D.N.Y. 2005) – although not the law of this Circuit – does not extend as far as the exculpatory clause in this Plan.  In *Enron,* the release was limited to those actively formulating the reorganization plan, such as the debtor, counsel, the examiner, etc. There were no pending or potential claims against any third party.   In this case, the release extends to any individual that had any involvement with the debtors at any time during the bankruptcy process, such as Edra Blixseth, Sam Byrne, CrossHarbor Capital Partners, Steven Brown (Mr. Blixseth's former lawyer) and even Credit Suisse, who claimed prior to settling the claims against it for predatory lending.

In what perhaps highlights the impropriety of the releases, and as recounted in the Opening Brief, Mr. Blixseth has numerous claims against his ex-wife, Edra, in connection with her pre- and post bankruptcy conduct, including, without limitation, her destruction of evidence of her pre-bankruptcy involvement with Sam Byrne, who controlled Yellowstone Club

prebankruptcy through a predatory $35 million loan to Edra – at a time when Yellowstone Club was valued by Cushman Wakefield at $1.114 *billion* dollars, her involvement in the preparation of fraudulent Grand Jury "target letters" falsely naming Mr. Blixseth as a target of a grand jury investigation, and her breach of numerous nondischargeable obligations to Mr. Blixseth incorporated into their Marital Settlement Agreement and final judgment entered by the California Superior Court.

Steven Brown, Mr. Blixseth's former counsel who represented Mr. Blixseth in connection with the Credit Suisse loan that he then, as chairman of the UCC, sued Mr. Blixseth on,  turned over hundreds of attorney-client communications, and actually justified his position as Chairman of the UCC on the ground that "because there are many facts that I know better than almost anyone else about the intricacies of the various agreements that have been struck over the years," he gained from Blixseth while serving as Blixseth's attorney.  Apdx. 03706. Perhaps most incredible, Brown rendered a legal opinion to Mr. Blixseth approving the Credit Suisse nonrecourse loan and the transfer of $209 million of that loan as contemplated by Credit Suisse, to Blixseth Group, Inc., and then he and counsel for the UCC worked

together to develop theories to undermine his own opinion letter to sue his former client, Mr. Blixseth. Although Mr. Blixseth has a clear malpractice claim against Mr. Brown for his *post*-petition conflicts of interest – not addressed by Appellees – such an action would fall squarely within the ambit of the exculpation clause.

Finally, the settlement term sheet between the UCC and Credit Suisse not only requires that it be included in the Section 8.4 release, but control the the Liquidating Trust that is doggedly pursuing Mr. Blixseth and, after the unsecured creditors are paid.

Thus, virtually without notice of the terms of its settlement, Credit Suisse has not only immunized itself from the very predatory lending claims found by the bankruptcy court but at the same time, could prosecute Mr. Blixseth for receiving money from its loan and thereby turn a nonrecourse loan secured only by the assets of the Yellowstone Club into a recourse loan against Mr. Blixseth personally. Such a scenario turns equity on its head.[6]

---

[6] Appellees have waived any argument by not addressing these issues at all. Instead, with no support or citation to any record, Appellees insist that the releases are essential to the Plan, and again contend, that the bankruptcy court can enjoin lawsuits against non-debtors. *Responding Brief*, p. 13, n. 11.

# III.

## THE CREDIT SUISSE SETTLEMENT MUST BE REVERSED FOR LACK OF NOTICE

Appellees are wrong on the standard of review, and mischaracterize the facts as well.  First, the interpretation of a statute or rule is subject to *de novo* standard of review.  Whether the bankruptcy court correctly applied Rule 9019 is purely a question of law.  Second, Appellees are just plain wrong that that Mr. Blixseth and all creditors were "fully aware of the settlement and the bankruptcy court's intention to determine the merits of the settlement on June 1."  Appellees ignore the actual transcript of the May 18, 2009 hearing where the bankruptcy court (and no creditors) reviewed a settlement term sheet just negotiated that day, and approved it *at that time* "pursuant to Rule 9019."[7]

Parties' desire to settle litigation do not overcome the mandatory due

---

[7]  "I am glad you brought that up.  I just kind of overlooked it. Based upon Rule 9019, my consideration of the testimony, of the term sheet, negotiations that went into that, and based upon the - (inaudible) - property factors the settlement set forth in the term sheet and its attachments is approved.  We'll issue an order to that effect."  May 18, 2009 hearing Transcript.

process requirements of Fed. R. Bankr. Rule 9019.  Courts must presume that in adopting a Rule of Bankruptcy Procedure, the Supreme Court says in a Rule what it means and means in a Rule what it says there.  *See In re Rankin*, 320 B.R. 171, 182 (Bankr. D. Mont. 2005).  A motion by the Trustee, twenty day notice as provided in Rule 2002(a), and a hearing after notice is required.  Fed. R. Bankr. P. 9019.

*In re Masters, Inc.*, 149 B.R. 289 (E.D.N.Y.1992), not even referred to by Appellees, is directly on point:

> The notice requirement in Rule 9019(a) cannot be ignored merely because a proposed settlement is made in open court during trial rather than on papers submitted to the bankruptcy court prior to trial. . . . Moreover, notice to the Creditors' Committee does not waive notice to the individual creditors on the service list, nor can a bankruptcy judge eliminate the Rule 9019(a) notice requirements even if he believes that his ultimate approval of the proposed agreement is a virtual certainty.

*Id*.  It is impossible to state that the settlement did not affect creditors.  Credit Suisse, the original predatory lender (in the words of Judge Kirscher) not only immunized itself from any claims but then obtained majority control of the Liquidating Trust.  This enabled it to seek recourse through the powers of the Trustee against, among others, Mr. Blixseth for its non-recourse loan.

Whether or not the compromise might ultimately be approved is irrelevant to whether all interested parties are entitled to proper notice of the terms of the settlement, and not just shortened notice of a plan confirmation hearing where the settlement has already been approved.

## CONCLUSION

For the reasons set forth above, Appellant asks this Court to reverse the bankruptcy court's Order approving the Third Amended Reorganization Plan and the Findings of Fact and Conclusions of Law.[8]

Dated: December 7, 2009                    Respectfully Submitted,


By:  /s/ *Michael J. Flynn*          By:   /s/ *Joel E. Guthals*
     Michael J. Flynn                       Joel E. Guthals, Attorney No. 589

        *Attorneys for Timothy L. Blixseth, Appellant*

---

[8]  Appellees also incorporate their arguments on equitable mootness. That motion has already been decided and Appellants likewise incorporate the arguments made in opposition to Appellees' motion as is necessary.

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the forgoing Appellant's Reply Brief contains 16 pages with 3,187 words, exclusive of cover page, table of contents, signature lines, certificate of compliance, and certificate of service, and is typewritten in a 14 point font size without erasures or materially defacing interlineations, with page size of 8.5 x 11 inches.

Guthals, Hunnes & Reuss, P.C.


By:    /s/ *Joel E. Guthals*
Attorneys for Timothy L. Blixseth,
Appellant

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify under penalty of perjury that on December 8, 2009 or as soon as possible thereafter, copies of the foregoing Reply was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same and that in addition service by mailing a true and correct copy, first class mail, postage prepaid, was made to the following persons/entities who are not ECF registered users: None.

**Guthals, Hunnes & Reuss, P.C.**
**P.O. Box 1977**
**Billings, MT  59103-1977**


By:/s/ *Joel E. Guthals*

Attorneys for Timothy L. Blixseth, Appellant

-18-